# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KEYAWN JACKSON,
      Petitioner,

vs.

WANZA JACKSON, WARDEN,
      Respondent.

Civil Action No. 1:04-cv-032

Weber, J.
Black, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a state prisoner, brings this case pro se seeking a Writ of Habeas Corpus

pursuant to 28 U.S.C. §2254. This matter is before the Court upon the petition (Doc. 1),

respondent's return of writ and exhibits thereto (Docs. 8, 10), petitioner's traverse (Doc. 11), and

petitioner's amended petition. (Doc. 15).

## I. Facts

This case involves the following facts, as summarized by the Twelfth District Ohio Court

of Appeals:

{¶ 2} On the evening of February 15, 2001, appellant was at the American Legion
in the city of Hamilton, in Butler County. Appellant was involved in an
altercation with Quantarious Morris ("Quan"), Chico Morris ("Chico"), and James
Collins ("James"). The accounts of what transpired that night differ. Appellant
testified that Quan, Chico, and James displayed weapons and threatened to kill
him at the American Legion. James testified that it was appellant who threatened
them and lifted his shirt to display a weapon. James testified that neither he,
Chico, nor Quan had any weapons that night.

{¶ 3} Appellant left the American Legion and walked one block to the Park
lounge. Appellant stated that Quan, Chico, and James followed him to the Park
Lounge and again displayed weapons and threatened to kill him. Appellant
testified he was frightened so he left the Park Lounge and walked to Mahogany's
Bar.

{¶ 4} Appellant walked to Mahogany's Bar looking for someone to give him a
ride because he was afraid to walk home alone since Chico, Quan, and James

knew where he lived. Appellant's residence is six blocks from the Park Lounge. Mahogany's Bar is ten blocks from the Park Lounge. According to appellant, he was walking across the dance floor at Mahogany's Bar when Quan, Chico, and James surrounded him. Appellant claimed he was struck on the left side of the face with an object he thought was a pistol. Chico testified that he was the only person to approach appellant. As Chico came near appellant, appellant threw the first punch. Chico and appellant began fighting on the floor of the bar. While appellant was on the floor Quan, James, Chico, and possibly others beat and kicked him.

{¶ 5 } The bouncer of Mahogany's Bar, Charles Von Miller, came to appellant's aid. Miller testified that when he pulled Chico off appellant, appellant had a pistol pointed at Chico. A single gunshot was fired. A bullet entered and exited Chico's upper thigh. Miller then heard a "thump" behind him. The thump was Damon Collier falling onto one of the booths behind Chico. Collier had a gunshot wound to his head. Miller physically threw Chico out of the establishment. Then Miller physically threw appellant out of the establishment. Miller stated appellant was still holding what appeared to be "a .380 caliber" pistol in his hand when he left the premises.

{¶ 6} At approximately 1:30 a.m., on February 16, 2001, police officers were dispatched to Mahogany's Bar. Lieutenant James Gross found Collier lying on his left side on the floor of Mahogany's Bar. Collier was choking on blood and brain matter that had accumulated in his mouth. Collier was transported to the hospital where he died as a result of the gunshot wound to his head. A copper-jacketed .380 caliber round was found lodged between Collier's brain and skull.

{¶ 7} Appellant turned himself into the police on February 19, 2001. Appellant was tried before a jury and convicted of reckless homicide, involuntary manslaughter, felonious assault, illegal possession of a firearm in a liquor premises, and having a firearm under a disability.

(Doc. 8, Exh. 14 at 2-4).

## II.  Procedural History

Petitioner was indicted by the Butler County Grand Jury in March 2001 on one count of

murder in violation of Ohio Rev. Code § 2903.02(B), with a firearm specification [Count 1], one

count of involuntary manslaughter in violation of Ohio Rev. Code § 2903.04(A), with a firearm

specification [Count 2], one count of felonious assault in violation of Ohio Rev. Code §

2903.11(A)(2), with a firearm specification [Count 3], one count of illegal possession of a firearm in a liquor permit premises in violation of Ohio Rev. Code § 2923.121(A) [Count 4], one count of having weapons while under a disability in violation of Ohio Rev. Code § 2923.13(A)(3) [Count 5], three counts of trafficking in a counterfeit controlled substance in violation of Ohio Rev. Code § 2925.03(A) [Counts 6, 7, and 17], five counts of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A) [Counts 8, 10, 11, 13 and 15], and four counts of possession cocaine in violation of Ohio Rev. Code Ann. § 2925.11(A) [Counts 9, 12, 14 and 16]. (Doc. 8, Exh. 1).

On March 20, 2001, two counts of the indictment were amended; Counts 6 and 7 (trafficking in counterfeit controlled substance) were corrected to read Ohio Rev. Code Ann. § 2925.37(B) rather than § 2925.03(A). (Doc. 8, Exh. 2).

Upon arraignment, Jackson, through counsel, entered a plea of not guilty as to all counts. On April 23, 2001, Jackson filed a motion to sever Counts 6 through 17 from the indictment (Doc. 8, Exh. 3), which the State opposed. (Doc. 8, Exh. 4).  A hearing was held, and on April 30, 2001, the trial court granted severance of Counts 1 through 5 of the indictment and set those charges for jury trial.  The remaining counts, which are not part of the instant habeas action, were scheduled for trial at a later time. (Doc. 8, Exh. 5).  Thereafter, Jackson filed a motion to suppress all statements and tangible evidence incident to his arrest and a motion to suppress identification testimony. (Doc. 8, Exhs. 6 and 7).  The trial court overruled Jackson's motion to suppress identification testimony on the record. (Doc. 10, June 25, 2001 Tr., p. 32).

Jury trial commenced on July 30, 2001.  That same date, the State filed a motion in limine requesting a court order prohibiting Jackson from presenting the affirmative defense of

3

self-defense. (Doc. 8, Exh. 8).  Jackson filed a memorandum in opposition. (Doc. 8, Exh. 9).  At

the conclusion of the State's case, Jackson moved for a judgment of acquittal pursuant to Ohio

Criminal Rule 29, which the court overruled. (Doc. 10, Trial Tr., pp. 185-186).  Jackson's

second motion for acquittal was also overruled. (Doc. 10, Trial Tr., p. 263).

On August 1, 2001, a jury found petitioner not guilty of murder, but guilty of the lesser-

included offense of reckless homicide with a firearm specification, guilty of involuntary

manslaughter with a firearm specification, guilty of felonious assault with a firearm

specification, guilty of illegal possession of a firearm in a liquor permit premises, and guilty of

having weapons while under disability. (Doc. 10, Trial Tr., p. 273-275).

On September 26, 2001, the trial court sentenced Jackson to serve a term of nine years

incarceration for involuntary manslaughter [Count 2] plus an additional three years for the

firearm specification to be served before any other time, four years incarceration for reckless

homicide [Count 1] to be served concurrently to Count 2, two years incarceration for felonious

assault [Count 3] to be served consecutively to Count 2 and eleven months for illegal possession

of a firearm in a liquor permit premises [Count 4].  The conviction for having weapons while

under disability [Count 5] as well as all of the gun specifications were found to be offenses of

similar import with Count 2 and were merged for sentencing. (Doc. 8, Exh 10).

Represented by counsel, petitioner filed a timely appeal of his convictions and sentences

raising four assignments of error:

> 1.  The trial court erred to the prejudice of the Defendant/Appellant in its
> instruction to the jury as to the limited right of a person under disability to use a
> firearm for self-defense, by its use of the words "immediately before the
> incident."
> 2.  The trial court erred to the prejudice of Defendant/Appellant in failing to
> instruct the jury on negligent assault as a lesser included offense of felonious

assault.

3.  The trial court erred to the prejudice of the Defendant/Appellant in failing to grant Appellant's motion to dismiss the charges of murder and felonious assault with gun specifications pursuant to Crim. R. 29 at the close of the State's case.

4.  The trial court erred to the prejudice of the Defendant/Appellant in entering a verdict of guilty to the offenses of felonious assault and involuntary manslaughter with gun specifications as the verdicts are not supported by the manifest weight of the evidence.

(Doc. 8, Exh. 11).  The State filed a brief in response (Doc. 8, Exh. 12) and Jackson filed a reply brief. (Doc. 8, Exh. 13).  On September 9, 2002, the Twelfth District Court of Appeals issued an opinion affirming the trial court's judgment and overruling petitioner's assignments of error. (Doc. 8, Exh. 14).

Petitioner, through different counsel, timely appealed to the Supreme Court of Ohio and raised the following propositions of law:

I.  A trial court errs to the prejudice of a defendant when it instructs the jury as to the limited right of a person under disability to use a firearm for self-defense, by using the words "immediately before the incident" without further explanation or amplification.

II.  A trial court errs to the prejudice of a defendant when it fails to instruct the jury on negligent assault as a lesser included offense of felonious assault.

III.  A trial court errs to the prejudice of a defendant when it fails to grant a defendant's motion to dismiss the charges of murder and felonious assault with gun specifications pursuant to Crim. R. 29 at the close of the State's case.

IV.  A defendant's constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution are denied when counsel fails to raise issues on appeal that, if raised, would probably have resulted in reversal.

(Doc. 8, Exh. 15).  The State filed a memorandum in response. (Doc. 8, Exh. 16).  On January 15, 2003, the Supreme Court of Ohio declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. (Doc. 8, Exh. 17).

5

On January 20, 2004, petitioner filed a Petition for Writ of Habeas Corpus in this Court

raising four grounds for relief:

**Ground One**: Prejudicial/incomplete jury instructions.

**Supporting FACTS**:  The trial court prejudiced defendant in instructing the jury
as to the limited right of a person under disability to use a firearm for self-
defense, by using the words "immediately before the incident" without further
explanation or amplification.

**Ground Two**: Prejudicial jury instructions.

**Supporting FACTS:**  The trial court erred to the prejudice of defendant by
failing to instruct the jury on lesser included offenses when there was evidence of
such on the record.

**Ground Three**: Failure to grant a Crim. R. 29 motion to dismiss.

**Supporting FACTS**: The trial court erred to the prejudice of the defendant when it
failed to grant his Crim. R. 29 motion to dismiss, when there was clear and
convincing evidence introduced at trial to show that he was not guilty of murder or
felonious assault at the close of the state's case.

**Ground Four**:  Ineffective Assistance of Appellate Counsel

**Supporting FACTS**: Appellate counsel prejudiced defendant when counsel failed
to raise issues on appeal that, if raised, would probably have resulted in reversal.

(Doc. 1 at 5-6).  Respondent filed her return of writ and exhibits thereto on June 7, 2004. (Docs.

8, 10).  Petitioner filed his traverse on July 14, 2004. (Doc. 11).  On May 13, 2005, petitioner

filed his amended petition reiterating his first three grounds for relief and adding a new fourth

ground for relief:

**Ground One:** The trial court erred to the prejudice of the Defendant/appellant in
its instruction to the jury as to the limited right of a person under disability to use
a firearm for self-defense, by its use of the words "immediately before the
incident" in direct violation of the fifth, sixth, and fourteenth amendments to the
U.S. constitution.

**Ground Two:** The trial court erred to the prejudice of the Petitioner in failing to
instruct the jury on negligent assault as a lesser included offense of felonious

6

assault in violation of the fifth and fourteenth Amendments to the U.S. constitution.

**Ground Three:** The trial court erred to the prejudice of the Petitioner in failing to grant Petitioner's motion to dismiss the charges of murder and felonious assault with gun specifications pursuant to Crim. R. 29 at the close of the State's case in violation of the Fifth and Fourteenth Amendments to the U.S. constitution.

**Ground Four:** The Petitioner hereby claims "actual innocence" to all charges for which he was convicted of.

(Doc. 15).

## III.  Ground One of the petition is without merit.

Petitioner's first ground for relief asserts that the trial court violated his constitutional rights when it instructed the jury as to the limited right of a person under disability to use a firearm for self-defense.  Under Ohio law, a defendant may raise a claim of self-defense as an exception to a charge of carrying a weapon while under a disability.  *See Ohio v. Hardy*, 60 Ohio App.2d 325, 329-330, 397 N.E.2d 773, 776-77 (Ct. App. 1978); *see also Ohio v. Fryer*, 90 Ohio App.3d 37, 45, 627 N.E.2d 1065, 1070 (Ct. App. 1993)("The so-called self-defense exception to the charge of carrying a weapon under disability is an extremely narrow exception.").  In instructing the jury on the elements of having a weapon under a disability, the trial court gave the following instruction:

All individuals, including those under disability prohibiting carrying weapons, having a right to defend themselves against immediate threat of deadly force provided, however, they did not knowingly acquire, have or carry or use the firearm immediately before the incident in which the firearm was possessed, carried or used.

(Doc. 8, Exh. 18 at 22).  Petitioner contends that the court's use of the words "immediately before the incident" effectively deprived him of his self-defense claim because he necessarily

had to acquire the gun "immediately before the incident" in order to shoot in self defense.

In addressing the merits of petitioner's claim, the Twelfth District Court of Appeals, the last state court to issue a reasoned opinion on the claim, found the following:

> Appellant argues the trial court abused its discretion when it instructed the jury without further defining the word "immediately." Appellant argues the use of the words, "immediately before the incident" prejudiced him because the words misled the jury.
>
> {¶ 11} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed upon appeal unless an abuse of discretion is shown. State v. Martens (1993), 90 Ohio App.3d 338, 343, 629 N.E.2d 462; State v. Guster (1981), 66 Ohio St.2d 266, 272, 421 N.E.2d 157. An abuse of discretion connotes that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
>
> {¶ 12} R.C. 2923.13 defines having weapons under disability as follows:
>
> {¶ 13} "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> {¶ 14} " * * *
>
> {¶ 15} "(2) Such person is under indictment for or has been convicted of any felony of violence * * *. (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use sale, administration, distribution, or trafficking in any drug of abuse * * *.
>
> {¶ 16} "(B) Whoever violates this section is guilty of having weapons while under disability, a felony of the fourth degree ."
>
> {¶ 17} In the case at bar, appellant admitted to prior convictions for several felonies, including drug offenses, therefore, he would be considered under a disability pursuant to R.C. 2923.13.
>
> {¶ 18} Appellant argues his situation is identical to that of the defendant in State v. Hardy (1978), 60 Ohio App.2d 325, 397 N.E.2d 773, in that he did not have possession of the gun at any time prior to the altercation. The defendant in Hardy gained possession of and used a weapon only for the brief period necessary to deflect an immediate, overt physical threat from another person with a deadly weapon. Id. at 328-330, 397 N.E.2d 773. The Hardy court held that "the

8

prohibitions of R.C. 2923.13 do not restrict the right of an individual under a disability from acting in self-defense, when he or she did not knowingly acquire, have, carry or use a firearm previously." Id. at 330, 397 N.E.2d 773. (Emphasis added.) The trial court rejected the word "previously," used by the court in Hardy, as misleading to the jury. Appellant argues the use of "immediately" without defining the meaning is even more misleading.

{¶ 19} Appellant testified that he fortuitously found a loaded pistol on the floor of the bar and that he only acquired the pistol to defend himself against Chico, Quan and James. Appellant testified that he fired the pistol into the air to scare off his attackers, and then dropped the pistol. However, James testified that appellant "lift up his shirt [sic] a little bit and somethin' shiny--* * * I can't say it was a knife or a gun but it was somethin' [sic]." James was asked on direct examination if he saw appellant remove a firearm from his clothing during the fight. James was asked, "[a]nd he pulled [the pistol] from where?" James answered, "[f]rom here, right side of his pants." Chico testified that appellant "pulled the gun out, he had the gun like goin', like I said, toward my chest." Miller testified that he did not see a firearm on the floor before or during the fight. Furthermore, Miller testified that appellant retained possession of the pistol and still had it in his hand when he was thrown out of the bar. The pistol was not found inside or outside Mahogany's Bar after appellant was ejected.

{¶ 20} The jury was free to believe all, none, or only part of the testimony of any of the witnesses, including appellant. See State v. Sims (Feb. 20, 1997), Franklin App. No. 96 APA05-676. Thus, based on the evidence presented, a reasonable jury could have convicted appellant of having a weapon while under a disability. We find nothing in the record indicating that the court abused its discretion by giving the instruction to the jury with the words "immediately before the incident." There was no prejudice to appellant. Therefore, the first assignment of error is overruled.

(Doc. 8, Exh. 14 at 4-6, footnotes omitted).

The factual findings of the state appellate court are entitled to a presumption of

correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C.

§ 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001).  In addition, the decision of the Ohio Court of Appeals is binding on

this Court unless it is contrary to clearly established law or was based on an unreasonable

determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110

Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim

adjudicated on the merits in state court unless the adjudication either:

> 1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrases "contrary to" and "unreasonable application" have

independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).  Upon review of the entire record, this

Court concludes that petitioner has failed to establish that the findings of the state appellate court

are unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor*, 529 U.S. 362

(2000).

The fact that a jury instruction was allegedly incorrect under state law is not a basis for

habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  To warrant habeas corpus relief,

the challenged jury instructions must not only have been undesirable, or even "universally

condemned," but also, taken as a whole, so infirm that they rendered the entire trial

fundamentally unfair in violation of due process. *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977)

10

(quoting *Cupp v. Naughten,* 414 U.S. 141, 146 (1973)); *see also Estelle,* 502 U.S. at 72; *Austin v. Bell,* 126 F.3d 843, 846 (6th Cir. 1997), *cert. denied,* 523 U.S. 1079 and 1088 (1998).  "Errors in jury instructions do not rise to the level of a constitutional violation unless the habeas petitioner can establish that the 'instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Buell v. Mitchell*, 274 F.3d 337, 365 (6th Cir. 2001).  On habeas review, the Court must determine whether there is a reasonable likelihood that the jury applied the instruction in a way that prevents consideration of constitutionally relevant evidence or in a manner that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380 (1990).  *See also Estelle,* 502 U.S. at 72; *O'Neal v. Morris,* 3 F.3d 143, 145 (6th Cir. 1993), *vacated on other grounds,* 513 U.S. 432 (1995).  The challenged instructions "may not be judged in artificial isolation," but rather must be considered in the context of the instructions as a whole and the trial record. *Estelle,* 502 U.S. at 72 (quoting *Cupp,* 414 U.S. at 147).

Petitioner claims the trial court's use of the term "immediately" without further definition misled the jury.  Petitioner argues that he necessarily had a firearm in hand "immediately" before the shot was fired.  Petitioner contends that if the jury believed his testimony that he did not have possession of the gun until he saw it on the floor, picked it up, and fired it, he would still be denied his self-defense claim because he "immediately" had the gun in his hand before the shooting.

The Ohio Court of Appeals rejected this claim, finding the trial court properly instructed the jury with regard to having a weapon while under a disability.  The trial transcript supports the Court of Appeals' decision in this regard and shows that the jury was faced with two conflicting stories: that of petitioner showing he fortuitously discovered a loaded gun on the

11

floor within reach during the heat of a barroom brawl, and that of the other witnesses showing petitioner had the gun in his possession prior to the start of the fight. Given the differing trial testimony, it was a question of fact whether petitioner had a gun prior to the fight or found it during the fight. As the Court of Appeals found, the jury was free to assess the credibility of the witnesses and choose which version of events to believe. They obviously did not believe petitioner's version of events and, in so finding, were obligated to reject petitioner's claim of self defense.

To the extent petitioner argues the instruction deprived him of a "meaningful opportunity to present a complete defense" as guaranteed under the Constitution, *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993), his contention is without merit. In *Gilmore*, the Supreme Court rejected a similar claim, noting that it has previously recognized the right to present a complete defense in cases concerning "the exclusion of evidence" or "the testimony of defense witnesses," but has not done so in cases involving "restrictions imposed on a defendant's ability to present an affirmative defense." *Id*. The *Gilmore* Court expressly rejected the proposition that "the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process" because "such an expansive reading of our cases would make a nullity of the rule reaffirmed in *Estelle v. McGuire*, *supra*, that instructional errors of state law generally may not form the basis for federal habeas relief." 508 U.S. at 344. Therefore, petitioner's claim must fail.

Considering the challenged instruction in the context of the jury instructions as a whole and the trial record, *see Cupp*, 414 U.S. at 147, the Court of Appeals' conclusion was not unreasonable. Petitioner has not shown that the trial court's jury instruction was contrary to or

12

an unreasonable application of Supreme Court precedent, or that it "so infected the entire trial that the resulting conviction violate[d] due process." *Estelle*, 502 U.S. at 72.  Accordingly, he is not entitled to habeas relief with respect to this claim.

**IV.  Ground Two of the petition is without merit.**

Ground Two of the petition asserts petitioner's constitutional rights were violated when the trial court failed to instruct the jury on negligent assault as a lesser included offense of felonious assault.  Petitioner argues that the evidence at trial strongly supported an acquittal on the charge of felonious assault, yet possibly supported a conviction on negligent assault. Therefore, petitioner asserts, the trial court abused its discretion in failing to give an instruction on negligent assault.

To the extent petitioner claims he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law governing the giving of lesser-included offense instructions, he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding.  A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied,* 488 U.S. 866 (1988); *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied,* 488 U.S. 1011 (1989).

Turning to the constitutional issue, the United States Supreme Court held in *Beck v. Alabama,* 447 U.S. 625 (1980), that a defendant in a capital murder case has a constitutional

right to have the jury instructed on a lesser included offense in certain situations. *Beck,* 447 U.S. at 638.  When a jury is given only two options, "not guilty" and "guilty of capital murder," the risk that the jury will convict when it has reasonable doubt is too great; therefore, in that limited context, a lesser included non-capital offense instruction is required when there is evidence to support it. *Id.*  The Court in *Beck* expressly declined to decide "whether the Due Process Clause would require the giving of such instruction in a non-capital case." *Id.* at 638 n.7.  To date, the Supreme Court has not held that due process requires the giving of a lesser included offense instruction in a non-capital case.  *See Scott v. Elo,* 302 F.3d 598, 606 (6th Cir. 2002), *cert. denied,* 123 S.Ct. 1272 (2003).  The United States Court of Appeals for the Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)); *see also Scott*, 302 F.3d at 606.

In *Bagby*, the Sixth Circuit refused to extend *Beck* to the non-capital context on federal habeas corpus review of a state conviction, reasoning as follows:

> It appears to us that the Supreme Court's opinion in *Beck* is grounded upon Eighth Amendment concerns, rather than those arising from the Due Process Clause of the Fourteenth Amendment.  If we are correct in that assessment, then we are not required to extend *Beck* to noncapital cases.  Instead, we must determine whether the error asserted by Bagby is of the character or magnitude which should be cognizable on collateral attack.  Is the failure to instruct on lesser included offenses in noncapital cases such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with rudimentary demands of fair procedure? . . .  Experience tells us that it is not.

> Our view, that it is not an error of such character and magnitude to be cognizable in federal habeas corpus review, is shared by a majority of the circuits. . . .

*Bagby,* 894 F.2d at 796-97 (citations omitted).  The court postulated it was "conceivable" that

claims such as petitioner's might be cognizable on federal habeas review where "a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Id.* at 795. The court emphasized, however, such occasions would occur only in the "most unusual circumstances," such as where the failure to give the instruction likely resulted in the conviction of an innocent person, because "it is not the function of a federal habeas court to correct errors in state law" and because the conclusion of the state's highest court that a defendant's request for a lesser included offense instruction is not warranted by the evidence elicited at trial "is axiomatically correct, as a matter of state law." *Id.*; *see also Todd v. Stegal,* 40 Fed. Appx. 25, 28 (6th Cir. Apr. 12, 2002), *cert. denied,* 537 U.S. 981 (2002).

Here, petitioner has not shown that this case involves "most unusual circumstances," where a fundamental miscarriage of justice has resulted from the arbitrary and unsupportable refusal of the trial court to give a lesser-included offense instruction in clear defiance of state law. In this case the Ohio Court of Appeals upheld the trial court's determination that petitioner acted knowingly, and not negligently, in the shooting at the bar. The state court of appeals cited to the following testimony at trial showing petitioner did not act negligently, but rather knowingly during the shooting:

James testified that appellant lifted his shirt to display a weapon. James then testified that appellant removed a pistol from "the right side of his pants." Chico testified that during the fight, appellant pointed the gun "towards my chest, *** and then the gun got moved down toward my stomach." Miller, the bouncer at Mahogany's Bar, also saw appellant point the gun at Chico. Furthermore, Miller testified that he "saw [the gunshot] and heard it *** from the gun in [appellant's] hand." Appellant denies carrying a weapon into Mahogany's Bar, but admitted he fired a pistol there. Appellant stated, "I grabbed [the gun] and I shot it up in the air, tryin' to scare those guys up off of me." Appellant was asked on cross-examination, "did you have to take a safety off, did you have to cock it, I mean,

15

> what'd you have to do to fire it?" Appellant replied, "just pulled the trigger."
> When appellant was asked, "you fired one shot," he answered, "yes." These
> actions demonstrate that appellant acted purposefully in the shooting.

(Doc. 8, Exh. 14 at 9-10).  Under these facts, it cannot be said that the trial court's determination that the evidence was not sufficient to support an instruction on negligent assault was arbitrary and unsupportable and in clear defiance of state law.  *See Bagby*, 894 F.2d at 795.  This is not the unusual case contemplated by *Bagby* where a failure to give a lesser included offense instruction amounted to a fundamental miscarriage of justice that was likely to have resulted in the conviction of an innocent person.  *See Bagby,* 894 F.2d at 795; *see also Scott,* 302 F.3d at 606. Therefore, petitioner is not entitled to habeas corpus relief based on the trial court's failure to instruct the jury on a lesser-included offense of negligent assault.


## V.  Ground Three of the petition is without merit.

Ground Three of the petition asserts the trial court erred by failing to grant petitioner's motion to dismiss the charges of murder and felonious assault with gun specifications pursuant to Ohio Criminal Rule 29 at the close of the State's case in violation of petitioner's Fifth and Fourteenth Amendment rights.  Petitioner contends that the evidence at trial failed to support each element of the charges of murder and felonious assault.  Petitioner was ultimately found not guilty of murder, but guilty of the lesser included offense of reckless homicide.  He argues that had the trial court granted his Rule 29 motion for judgment of acquittal on the murder charge, he could not have been found guilty of the lesser included offense.  Essentially, petitioner claims there was insufficient evidence to support a conviction for murder or felonious assault under the Due Process Clause.

16

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship,* 397 U.S. 358, 364 (1970).  In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.  On habeas corpus review, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003)(citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id*.  In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.  *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).  Therefore, the question for this Court is whether the Ohio Court of Appeals' application of the "no rational trier of fact" test, as articulated in *Jackson* and adopted as a matter of Ohio law in *State v. Jenks*, 61 Ohio St.3d 259 (1991), was contrary to or an unreasonable application of that test to the facts of this case.

In overruling this assignment of error, the state appellate court hearing petitioner's direct

17

appeal made the following findings regarding his claim of insufficient evidence:

{¶ 36} Appellant argues when the state has failed to prove each element of the offenses, the evidence is insufficient to support a guilty finding and the trial court errs as a matter of law when it fails to grant a defendant's motion to dismiss at the close of the state's case.

{¶ 37} Pursuant to Crim. R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184.

{¶ 38} Murder, as defined by R.C. 2903.02(B), provides that:

{¶ 39} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

{¶ 40} Felonious assault is defined in R.C. 2903.11 as follows:

{¶ 41} "(A) No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 42} R.C. 2901.22(B) defines "knowingly" as:

{¶ 43} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 44} Deadly weapon is defined in R.C. 2923.11(A) as follows:

{¶ 45} "Deadly weapon means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 46} The firearm specifications accompanying the charges requires a finding that appellant had a firearm on or about his person or under his control while committing the underlying offense. See R.C. 2941.145(A).

{¶ 47} In its case-in-chief, the state's evidence demonstrated that appellant lifted his shirt to display a weapon of some sort to James. James and appellant were in a

18

liquor establishment at the time appellant lifted his shirt. When appellant and Chico were fighting, James saw appellant remove a pistol from "the right side of his pants." Chico testified that appellant pointed the pistol "towards my chest, * * * and then the gun got moved down toward my stomach." Miller testified that he also witnessed appellant pointing a pistol, which appeared to be a ".380 caliber," at Chico. Miller then "saw [the gunshot] and heard it * * * [f]rom the gun that was in [appellant's] hand." Miller and other witnesses testified to hearing only a single gunshot that night in Mahogany's Bar. Chico testified that a bullet entered and exited his upper thigh. Miller testified to hearing Collier fall onto a booth and then to the floor just after the shot was fired. Evidence demonstrated that Collier was struck in the head and killed by a .380 caliber bullet.

{¶ 48} Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence upon which a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Therefore, the trial court did not err in overruling defendant's motion for a Crim. R. 29 acquittal. Accordingly, the third assignment of error is overruled.

(Doc. 8, Exh. 14 at 11-13).

Petitioner does not dispute the factual findings of the state appellate court. The Ohio Court of Appeals fully considered and rejected petitioner's insufficient-evidence claim. This Court finds that the Ohio Court of Appeals' decision is consistent with *Jackson* and constitutes a reasonable application thereof, as well as a reasonable determination of the facts in light of the evidence. The Court concludes that sufficient evidence was presented from which any rational factfinder could reasonably convict petitioner. The prosecution presented several eyewitnesses to the shooting, one of whom was an employee of the bar, Charles Von Miller. In addition, petitioner's own testimony supports the finding that he knowingly fired the gun that injured Chico and killed Damion. When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, and for the reasons discussed by the state appellate court, this Court likewise concludes that the evidence was constitutionally sufficient to sustain petitioner's convictions. Therefore, Ground Three of the petition is without merit.

19

**VI. Ground Four of the Original Petition and Ground Four of the Amended Petition are without merit.**

Ground Four of the original petition asserts a claim of ineffective assistance of appellate counsel. Specifically, petitioner alleges that appellate counsel "prejudiced defendant when counsel failed to raise issues on appeal that, if raised, would probably have resulted in a reversal." (Doc. 1 at 6). The original petition does not specify the particular issues appellate counsel allegedly failed to raise. However, in petitioner's traverse, he clarifies that appellate counsel "failed to present his first and second assignments of error in a manner that would preserve them for Federal Review, because the issues were not well framed as Federal Constitutional Violations." (Doc. 11 at 9). Petitioner contends that counsel's failure to present his first and second assignments of error as viable federal constitutional violations resulted in the Ohio Court of Appeals' failure to address these issues in terms of petitioner's federal constitutional rights. (Doc. 11 at 10).

It appears that petitioner raised his appellate ineffective assistance of counsel claim in the Supreme Court of Ohio to avoid any procedural default his first appellate attorney may have caused by not fairly presenting his claims to the Ohio Court of Appeals. Respondent concedes that petitioner's claims were fairly presented to the State courts of Ohio and that such claims are preserved for federal habeas review. (Doc. 8 at 8). Respondent does not argue that any of petitioner's claims are procedurally defaulted (Doc. 8 at 8), and this Court has in fact reviewed the merits of petitioner's challenges to the jury instructions (his first and second assignments of error in the state courts) as discussed above. A review of petitioner's brief to the Ohio Court of Appeals reveals that appellate counsel relied on State cases employing a federal constitutional analysis and therefore fairly presented the constitutional nature of petitioner's claims to the State

court. (Doc. 8, Exh. 11, Brief of Appellant at 6-9, 10-11).  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001); *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987).  Thus, it cannot be said that counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Moreover, petitioner has failed to show any prejudice resulting from appellate counsel's alleged failures because this Court in fact has considered his first and second assignments of error (First and Second Grounds for relief) on the merits. *Id*. Accordingly, petitioner has not established his ineffectiveness of appellate counsel claim.

Petitioner's Amended Petition raises, for the first time, a separate Fourth Ground for relief: that he is "actually innocent" of all the charges upon which he was convicted. (Doc. 15 at 5).  Petitioner contends that "he, at all times, during the events that took place from which he was convicted of, acted strictly in self defense and that certain witnesses had knowledge of the incident and were never called upon to testify." (Doc. 15 at 6).  Petitioner fails to identify any such witnesses or the substance of their purported testimony.

First, petitioner did not fairly present his freestanding claim of actual innocence to the state courts.  He never raised the issue of actual innocence before the Ohio Court of Appeals or the Supreme Court of Ohio and, therefore, this claim is procedurally defaulted. *Cone v. Bell*, 359 F.3d 785, 789 (6th Cir. 2004).  Petitioner has failed to allege cause for the procedural default of his actual innocence claim or to show that failure to consider this claim will result in a "fundamental miscarriage of justice."  *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Therefore, this claim is not cognizable on habeas review.

Second, petitioner's freestanding actual innocence claim is not cognizable by a federal habeas court as a constitutional violation.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993)("[A]

21

claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); *see also Schlup v. Delo,* 513 U.S. 298 (1995) (actual innocence claim is relevant in federal habeas proceedings not as an independent claim for relief, but as a justification to overcome procedural obstacles to consideration of other federal constitutional violations that rendered a trial unfair). Petitioner's claim that he has newly discovered evidence of his actual innocence does not entitle him to habeas corpus relief absent an independent constitutional violation in the underlying criminal proceeding. Petitioner fails to identify how the testimony of these unidentified witnesses shows a constitutional violation for which he could obtain habeas relief. Accordingly, petitioner's Fourth Ground for relief is without merit.[1]

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's original and amended petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1, 15) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order

---

[1]     It is doubtful that petitioner's freestanding claim of actual innocence is even available in a non-capital case. The Supreme Court in *Herrera* assumed, "for the sake of argument," that there may be a capital case where an independent actual innocence claim may be considered on habeas review: where "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." 506 U.S. at 417. The Supreme Court noted, however, that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.* The Supreme Court's dicta in *Herrera, Id.* at 417, along with the concurring opinions of Justices O'Connor, Kennedy, and White, 506 U.S. at 419, 429, strongly suggest that a freestanding actual innocence claim may only be available, if at all, in capital cases.

adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 5/8/2006                                                    s/Timothy S. Black
                                                                  Timothy S. Black
                                                                  United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KEYAWN JACKSON,                                        Civil Action No. 1:04-cv-032
      Petitioner,

                                               Weber, J.
      vs.                                                      Black, M.J.

WANZA JACKSON, WARDEN,
      Respondent.


**NOTICE**


      Attached hereto is a Report and Recommendation issued by the Honorable Timothy S.

Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under

28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation

within TEN (10) DAYS of the filing date of this R&R.  Such party shall file with the Clerk of

Court and serve on all other parties written objections to the Report and Recommendation,

specifically identifying the portion(s) of the proposed findings, recommendations, or report

objected to, together with a memorandum of law setting forth the basis for such objection(s)

Any response by an opposing party to the written objections shall be filed within TEN (10)

DAYS after the opposing party has been served with the objections.  A party's failure to make

objections in accordance with the procedure outlined above may result in a forfeiture of his

rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d

947 (6th Cir. 1981).